Cite as 2023 Ark. App. 48

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CR-22-214

| | |
|---|---|
| RICKY ALLEN WILLIAMS<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered February 8, 2023<br><br>APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. 43CR-21-165]<br><br>HONORABLE BARBARA ELMORE, JUDGE<br><br>AFFIRMED |

**CINDY GRACE THYER, Judge**

Ricky Allen Williams was convicted by a jury in the Lonoke County Circuit Court of second-degree murder in the shooting death of John Harp. Williams was sentenced to a total of seventy-five years' imprisonment in the Arkansas Department of Correction.[1] Williams appeals, arguing that the evidence was insufficient to rebut his justification defense. Because his argument is not preserved for appeal, we affirm.

The basic facts are undisputed. Williams and Harp were childhood friends who had not seen each other for many years. They eventually reconnected through social media. On February 3, 2021, Harp and his friend, Khanh Tran, visited Williams at the home Williams shared with his mother in Ward, Arkansas. Williams was working on some vehicles at a barn on his property

---

[1]Williams was sentenced to sixty years' imprisonment on the second-degree murder charge with a consecutive fifteen-year sentence on a felony-firearm enhancement that was ordered to run consecutively.

when Harp and Tran arrived. While visiting Williams, Harp became intoxicated. Williams asked Harp to leave the property, and when Harp refused, Williams shot Harp. Harp collapsed, and Williams's mother and a neighbor placed Harp in Tran's car. Tran then drove Harp to the halfway house where they lived in Little Rock. Several hours later, Harp was discovered unresponsive in Tran's vehicle. Emergency personnel were dispatched and later took Harp to the hospital where he was pronounced dead from a gunshot wound. Williams was charged by information with first-degree murder.

At trial, Williams argued that the shooting was justified because Harp was sexually accosting his mother when he shot Harp. The State disagreed. It argued that Williams's mother's claims that Harp had physically attacked her were not credible. Instead, the State asserted that Williams had shot Harp, not because he had attacked his mother, but because Harp had disrespected him. The State also noted that, rather than retrieving a gun to resolve the dispute, Williams could have called the police but did not do so.

At the close of all the evidence, the court instructed the jury on first-degree murder as well as the lesser-included offenses of second-degree murder and manslaughter. The court also instructed the jury on the justification defense as to first-degree murder. After deliberations, the jury convicted Williams of the lesser-included offense of second-degree murder.

Williams's only argument on appeal is a challenge to the sufficiency of the State's evidence negating his justification defense. More specifically, Williams asserts that the trial court was misled by the prosecutor's claim that justification was an affirmative defense, which resulted in the burden of proof being improperly shifted to him.

Williams, however, never objected to the State's characterization of the justification defense as an affirmative defense, nor did he ever raise his improper burden-shifting argument below. We will not consider arguments that are raised for the first time on appeal, including constitutional arguments. *Sirkaneo v. State*, 2022 Ark. 124, 644 S.W.3d 392; *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. As such, to the extent Williams argues that there was an improper shifting of the burden of proof, his argument is not preserved for appeal.

To the extent he argues the actual merits of his sufficiency argument, that argument is also not preserved for appeal. At the close of the State's case, Williams moved for directed verdict, arguing that the State had not met its burden of proof with respect to the elements of first-degree murder and that he was entitled to a directed verdict on his justification defense. The motion was denied. He renewed his motion for directed verdict at the close of all of the evidence and urged the court to declare as a matter of law that the jury find justification. The motion was again denied. The jury subsequently found appellant guilty of the lesser-included offense of second-degree murder.

As stated above, Williams argues on appeal that the State failed to provide sufficient evidence of second-degree murder because it failed to negate his justification defense. However, his directed verdict motions at trial challenged the sufficiency of the evidence with regard to first-degree murder, not second-degree murder, and therefore any argument as to the sufficiency of the evidence on the lesser-included offense has been waived.

This court has held that in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the trial court of the elements of the lesser-included

offenses questioned by their motions for directed verdict. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). Williams's directed-verdict motion did not include the lesser-included offense of second-degree murder, either in name or in elements. Accordingly, his argument is not preserved for appellate review. *See Rasul v. State*, 2009 Ark. App. 631; *see also Mainard v. State*, 102 Ark. App. 210, 283 S.W.3d 627 (2008) (holding that appellant could not raise his justification defense on appeal of his second-degree-murder conviction because he had not included that lesser-included offense, either by name or elements, in his motions to the trial court).

Even if we were to reach the merits of Williams's sufficiency argument, we would affirm on that basis as well. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Scott-Paxson v. State*, 2015 Ark. App. 149, at 1, 457 S.W.3d 311, 312. When a defendant challenges the sufficiency of the evidence that led to a conviction, the evidence is viewed in the light most favorable to the State. *Id.*, 457 S.W.3d at 312. Only evidence supporting the verdict will be considered. *Id.*, 457 S.W.3d at 312. We also employ the substantial-evidence standard of review when reviewing the sufficiency of the State's negation of a justification defense. *Brown v. State*, 2020 Ark. App. 198, 595 S.W.3d 456; *Gillard v. State*, 2019 Ark. App. 438, 586 S.W.3d 703.

We note that justification is not an affirmative defense that must be pleaded but becomes a defense when any evidence tending to support its existence is offered to support it. *Schnarr v. State*, 2018 Ark. 333, at 10, 561 S.W.3d 308, 314–15. The State has the burden of negating the defense once it is put in issue. *Humphrey v. State*, 332 Ark. 398, 409, 966 S.W.2d 213, 218 (1998).

Justification is considered an element of the offense, and once raised, it must be disproved by the State beyond a reasonable doubt. Ark. Code Ann. § 5-1-102(5)(C) (Supp. 2021); *Anderson v. State*, 353 Ark. 384, 404, 108 S.W.3d 592, 605 (2003). Justification is a matter of intent and a question of fact for the jury. *Humphrey*, 332 Ark. at 409, 966 S.W.2d at 219. The jury determines not only the credibility of witnesses, but also the weight and value of their testimony. *E.g.*, *Luper v. State*, 2016 Ark. 371, at 6, 501 S.W.3d 812, 817. Moreover, the jury is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Brunson v. State*, 368 Ark. 313, 317, 245 S.W.3d 132, 136 (2006). The jury may also choose to believe the State's account of the facts rather than the defendant's. *Id.*

A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence or is using or about to use unlawful deadly physical force. Ark. Code Ann. § 5-2-607(a) (Supp. 2021). A person may not use deadly force in self-defense if the person knows he or she can avoid the necessity of using deadly force by retreating. Ark. Code Ann. § 5-2-607(b)(1)(A).

As discussed above, Williams claimed he was justified in shooting Harp because Harp was sexually harassing and assaulting his mother. The sole witness to support Williams's claim was his mother, who testified that Harp had violently attacked her. On cross-examination, however, the State presented evidence that called into question the credibility of her testimony. The State highlighted the fact that her trial testimony conflicted with the statements she made

5

shortly after the incident; that the photographs of the injuries she allegedly sustained in the incident appeared staged; and that she was less than truthful in other aspects of her testimony.

The State also refuted Williams's claims through the recorded statement he gave to police. In his statement, Williams indicated that Harp was "getting friendly" with his mother, and as a result, he told Harp to stop being "disrespectful and shit." Williams stated that things began to escalate when Harp demanded that he had "first choice" on the purchase of one of Williams's vehicles. Williams told the police, "You don't tell me what the hell I do with my vehicles. . . . You little bitch, you know, man. That – no, we don't do that." Williams reported that when things continued to escalate, he went into the house and returned with a gun. He then shot into the air and ordered Harp off his property. When Harp would not leave, Williams said: "Fuck you, bitch. Pow," and then he shot him.

The State also presented three videos displaying conversations between Williams and third parties that were recorded while Williams was in jail. In one of the conversations, Williams stated:

> 'Cause I walked to my house and I got my gun and I turned around and I asked the motherfucker to leave. He said, Fuck you, little brother I said, Really? Pow. I shot the bitch in his goddamn chest. I did that. I'll do it again. I don't give a flying fuck. You going to – goddamn, these motherfuckers are going to quit disrespecting me. Ricky Mother-fucking Williams said that.
>
> . . . .
>
> I'm taking all the charges. I fucking – bam. You hear me? I don't give a fuck about me. Just let them motherfuckers out there know I told you I wasn't no punk.

In another video-recorded conversation played to the jury, Williams said:

> And I, you know, – what he – I told her, I – fired the shot in the air and told him, I said, That's your last goddamn chance. Get off my property. And when he grabbed Mama and

6

said, Fuck you, bitch, I – pow. . . Center mass. . . .You know I'm a mother fucking marksman; right?

In that same conversation, when asked why he did not just shoot Harp in the leg, Williams responded, "No. No. Then he'd testify," indicating that he used deadly force to silence Harp, not necessarily to protect his mother.

As stated above, when determining whether there was sufficient evidence to support the verdict, only evidence supporting the verdict will be considered. Here, the State presented evidence that Williams shot Harp because he felt disrespected—by Harp's treatment of his mother; by his attitude toward his cars; and by refusing to leave the property when told. He bragged about shooting Harp and, in at least one of his recorded phone conversations, appeared to be joking about shooting him. The jury was shown the videos and was able to view and assess Williams's demeanor. While Williams's mother may have testified that Williams shot Harp because he was assaulting her, the State presented evidence casting doubt on her credibility and on her version of events. The jury was free to assign the weight, credibility, and value to be assigned to such evidence, *Lewis v. State*, 2014 Ark. App. 730, 451 S.W.3d 591; *Moody v. State*, 2014 Ark. App. 538, 444 S.W.3d 389. Given our deference to the jury's credibility determinations and that we consider only that evidence presented that supports the verdict, we conclude there was sufficient evidence presented by the State to negate Williams's justification defense.

For the reasons set forth above, we affirm.

Affirmed.

HARRISON, C.J., and VIRDEN, J., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.